Indictment for horse racing.
(Note. — The foreman of the grand jury was one of the defendants; and the court, on being informed by the grand jury that they were considering a bill in which he was implicated, appointed another foreman, and gave him leave to retire.)
The indictment in this case was under the act of assembly, and laid the offence in the different counts for instituting, being, concerned in, and betting on a horse-race; on the 19th and 20th of October, 1837. The grand jury met on the 9th April, 1838, and the indictment was found on the 11th April.
"If any person or persons shall institute, or be concerned in, or shall bet upon, any horse-race, cock-fight," c. "every person so offending upon conviction thereof shall forfeit and pay to the state a fine of thirty dollars: no indictment shall be preferred for an offence against the foregoing provision after the expiration of six months from the day of committing the offence." (Digest, 141.)
Frame, for the defendants, took the position that this indictment was not in time; and moved the court to instruct the jury to acquit them. He argued that the term months in the statute was to be construed lunar
months of twenty-eight days, and not calendar months. This is the general rule when a month is mentioned, whether in construing contracts or statutes, unless the contrary be expressed, or obviously meant. (3Stark. 1398-9.) This general principle is not varied by any thing in our act of assembly; that act changes the mode of computing time only in reference, to the punishment of crime.
"In every case in which corporal punishment is to be inflicted, the court in the sentence shall assign the day thereof; and, whenever imprisonment shall be a part of the punishment, the court in the sentence shall specify the day on which the term shall commence, and *Page 549 
also the day on which it shall expire. In reckoning months, every month shall be a calendar month; and a term of months of imprisonment shall be so many calendar months, and shall expire upon the same numerical day (including the same) of a calendar month, upon which it shall have commenced." (Digest, 143.)
Rogers, deputy attorney general, for the state, contended that this provision in the fourth section of the act punishing certain crimes, c. was not to be confined to the matter of punishment, but was a general provision changing the computation from lunar to solar time, at least as to all criminal, if not to all civil matters. He admitted that the rule of the English temporal courts is, that where a statute mentions a month without specification as to what kind of time, a lunar and not a calendar month is meant; but this is a mere arbitrary rule, adopted by the courts in ancient times, and probably growing out of a general hostility to the ecclesiastical courts, where the same word is adjudged a calendar month. In all the American cases which he had seen, the courts have refused to follow the English rule, except in New York, whose servile imitation of the English precedents is proverbial(Com. vs. Chambre, 4 Dallas, 143.) He therefore stated it as a general rule of the courts of the several states, with the single exception of New York, that where a statute speaks of months alone, the construction shall be calendar and not lunar months. In the construction of a statute as to a doubtful matter the argument of inconvenience properly applies; and the compution of time by calendar and not by lunar months, is by far more convenient. A contrary construction would leave a period between the courts twice a year when the offence of horse-racing might be committed with impunity, as more than six calendar months intervenes. Common understanding of the meaning of words has influence in the construction of statutes. Months are universally understood calendar months: no others are known, except as a matter of science. The term as vised in the amended constitution, must be understood calendar month, according to public usage. Residence of one month
in the county to qualify a voter; payment of a tax assessed sixmonths before the election. What are these; calendar or lunar months? Undoubtedly by universal understanding the former.
Per Curiam.
There is no principle of common law better settled in England, than the general rule of her temporal courts that, in construing a statute, the word months shall be confined to lunar instead of calendar months, unless the statute law shall otherwise define its meaning. 2 Blac.Com. 141; 6 Term, Rep. 224; Doug. 463. A conviction under the statute 5 Ann, c. 14, 54, must take *Page 550 
place within three lunar months. See 1 B. C. 500. See also 7Johns. Rep. 217, Jackson vs. Clark; 1 Johns. Cases 100, Leffingwellet al vs. White; 15 Johns. Rep. 120, Loring vs. Hailing;
3 Strak. Ev. 1398; 3 Johns. Ch. Rep. 74; Stackhouse vs. Halsey.
A different rule has indeed prevailed in several states of the union; but the common law of England is our guide in the construction of a statute.
The only question then to be considered is, whether the statute law has defined the word so as to change the common law construction. (Digest, 143, ante 548-9.) It is contended for the prosecution, that this provision is not to be restricted to the special subject matter of the section of which it is a part, but that it is a general provision regulating the construction of the whole satute.
The subject matter of this whole section of the act is corporal punishment. It first prescribes the mode in which the punishment of death shall be inflicted, and directs the court to fix the time of execution. It next directs the court in every case in which corporal punishment is to be inflicted to assign the day of punishment. It then proceeds to prescribe the specification in every sentence of imprisonment, of the day of the commencement and of the expiration of that imprisonment. Then in eodem flatu, in the same paragraph, and evidently, in reference to the same subject (of corporal punishment) it directs that in reckoning months, every month shall be a calendar month. So that should the court order capital execution at the expiration of one month, the construction of the sentence must be, that the prisoner must be allowed a calendar instead of a lunar month. And should the court order any other corporal punishment to be inflicted at the expiration of one or more months, the computation must be made by solar and not by lunar time. The section then provides also, that a term of months of imprisonment shall be so many calendar months. The meaning might undoubtedly have been more concisely expressed, for it was sufficient for all purposes to have said that "in every case
in which corporal punishment is to be inflicted, the court in the sentence shall assign the day thereof," without the separate provision that a day should be assigned for a capital execution: and so the general provision in reference to all corporal punishment, that "in reckoning months every month shall be a calendar month" was perhaps sufficient for all the purposes designed, without adding that "a term of months of imprisonment shall be so many calendar months." But the object of the legislature in thus multiplying words on the same subjects, was to be as explicit as possible. And if these words shall be construed as altering the whole law regarding the computation of time, instead of thus confining them to the exposition of the context, and controlling their import secundum *Page 551 subjectam materiam, then the subsequent clause it not less evidently unnecessary; for why provide that a term of months of imprisonment shall be so many calendar months, immediately after a general sweeping change in the whole law of the computation of time ? And, if the provision be not confined in its import to the subject of corporal punishment, how far does it extend or where is its limit? Is it confined to the single penal statute of which it is a part ? If so, then other acts such as that of the 21st January, 1831; or that of the 21st February, 1837; and other penal acts in the statute book, prescribing punishments for offences, refer to lunar months; while the act of the 8th February, 1826, refers to calendar months alone, and the same words in different parts of the same criminal code must receive different constructions. If the clause be general in its import, it controls the computation of time in all the law; and months in statutes not penal as well as in the act where it is found are calendar and not lunar months. Thus a clause evidently designed to extend to the statutes regarding corporal punishment alone, becomes the means of revolutionizing the whole established law on the subject of the reckoning of time, as well in civil as in criminal cases. If we view the words as they stand, as being doubtful in their import, this consideration that one construction would involve the whole law on this point in confusion, will be sufficient to drive us to repudiate an exposition attended with such consequences.
Much has been said about the inference to be drawn from the intent of the legislature to punish horse-racing, and it is urged that the law has made it an offence to be punished in every possible case'. But we can gather the intent only from the language of the law, and nothing is more clear than that it was not the intent at the time of passing this very act of 8th February, 1826, to punish racing, or to regard it as any offence whatever, if done at a certain season of the year. Thus this act ordains "that no indictment shall be preferred for the offence (horse-racing, c.) after the expiration of six months from the day of committing the offence." The courts by law were compelled to sit in this county in the year 1826, when the law was enacted, on the 17th April, and the 13th November; so that nearly seven months elapsed between the spring and fall terms of the only court in which a bill of indictment could be preferred for horse-racing, and of course for several weeks after the discharge of the grand jury in the spring of the year, any man might be concerned in a hores-race with impunity, whether months be construed as calendar or lunar. Such was the clear law at the time of the passage of the very act on which this indictment was founded; and even now, such is the effect of the limitation of six months, under the present *Page 552 
arrangement by law of the terms of court, that it would be impossible in many cases for a grand jury to find a bill of indictment for horse-racing within the limitation made by law, upon any computation of months whether calendar or lunar.
It is not for us to decide upon the policy or impolicy of the act, or of its limitation. When the legislature shall choose totally to prohibit horse-racing, it will our duty to declare and enforce the prohibition. But if they will continue a limitation which expressly forbids us to entertain a bill of indictment for horse-racing after six months from the time of the race, we have no authority to punish in such cases as the present. It is here admitted that more than six lunar months elapsed after the race, and before the preferring of this bill of indictment; and we could not warp the words in this or any other penal statute from their legal meaning for the purpose of punishing an act, however desirous we might be that the law had been different.
 The defendants were acquitted.